CROWLEY *v.* OHIO & MICHIGAN COAL CO.

1. MASTER AND SERVANT—CONFLICTING EVIDENCE — DIRECTED VERDICT.

In an action on a contract of employment, under which plaintiff was to be paid on a basis of the net profits of the business, where the evidence was conflicting, defendant was not entitled to a directed verdict.

2. SAME—WEIGHT OF EVIDENCE.

A verdict in favor of plaintiff for much less than he claimed, *held*, not against the weight of the evidence.

Error to Wayne; Jayne (Ira W.), J. Submitted January 11, 1928; resubmitted March 27, 1928. (Docket No. 15.) Decided April 3, 1928.

Assumpsit by Edward C. Crowley against the Ohio & Michigan Coal Company and another on a contract of employment. Judgment for plaintiff. Defendants bring error. Affirmed.

*Atkinson, O'Brien & Clark (Frank W. Atkinson,* of counsel), for appellants.

*Lucking, Hanlon, Lucking & Van Auken (Harry Helfman,* of counsel), for appellee.

POTTER, J. Plaintiff sued defendants in assumpsit to recover $14,173.41 and uncomputed interest. Judgment was rendered for $4,927.73 in favor of plaintiff and against defendants. They bring error.

Defendant Ohio & Michigan Coal Company was a corporation, all of the stock of which, except qualifying shares held by the plaintiff and a Mr. Baird, was owned by the defendant Cummiskey. Plaintiff began work for the defendant corporation in July, 1906, and

¹Master and Servant, 39 C. J. § 288; ²Id., 39 C. J. § 282.

continued until February 8, 1923.  In 1908 plaintiff
became secretary of the company, and in 1917 vice-
president and general manager.  The Ohio & Mich-
igan Coal Company was a wholesale dealer in Detroit
in hard and soft coal.  It had no coal yards.  It did
business throughout the middle western States and
in Canada.  Coal was handled in car load lots only.
When a sale was made the coal was ordered shipped
direct from the mines to the purchaser, or, if the com-
pany had the coal rolling, it was diverted in transit
to the customer.  The company billed the customer
for coal sold when it received the weights from the
mines.  This was generally from five days to two
weeks after the coal was shipped.  Mr. A. G. Baird
was, during the period covered by this controversy,
secretary of the Ohio & Michigan Coal Company in
general charge of its books and accounting.  Plaintiff
and Mr. Baird were in direct charge of the company's
office and business.  Defendant Cummiskey was at
his own office in another building in Detroit.  The
officers of the defendant corporation frequently advised
together.  Defendant Cummiskey was the president
of the Ohio & Michigan Coal Company.  In January,
1921, on the eve of defendant Cummiskey's departure
for Florida, two letters were written and signed as
a memorandum agreement entered into between de-
fendants and plaintiff, which letters were, at defend-
ant Cummiskey's suggestion, dated back to December
13, 1920, as follows:

"JAMES P. CUMMISKEY
Penobscot Bldg.,
Detroit.

December 13, 1920.

"Mr. E. C. CROWLEY,
"Ohio & Michigan Coal Co.,
"917 Dime Bank Bldg.,
"Detroit, Michigan.

*"Dear Sir:*  As the owner of the major portion of
the capital stock, and assets of Ohio & Michigan Coal

Company, and the director of its policies I hereby agree that a credit of $30,000 be placed to your account for the year 1920 in addition to all credits of previous years on the books of said company for good and efficient services since your association with me up to, and including December 31, 1920. This is done with the understanding that of this amount $15,000 will be permitted by you to remain in the treasury of said company in accordance with another agreement made with you this day until it is practical to re-organize Ohio & Michigan Coal Company or organize a new company for a capital of $100,000 when stock in the re-organized or new company will be issued to you fully paid up, at not to exceed par value to the amount of this $15,000, and you shall also at that time, or as soon thereafter as possible have the privilege of buying in the re-organized or new company at not to exceed par value an additional $17,000 worth of stock or any part of that amount at terms to be agreed upon.

"It is understood that if a re-organized or new company as herein purposed is not made or created on or before January 1, 1922, then the terms of the other agreement of this date herein mentioned are to be continued in full for one year, or until January 1, 1923, and if at that time a re-organized or new company is not made or created, then the $15,000 you are leaving in the treasury of the Ohio & Michigan Coal Company may be withdrawn by you at your option or by your heirs or assigns whereupon the understanding herein outlined together with our other agreement of this date herein mentioned will become null and void.

"Yours truly,

(Sgd.) "J. P. CUMMISKEY,

"Accepted and Satisfactory

(Sgd.) "E. C. CROWLEY.

"Witness: (Sgd.) R. L. BEASLEY."

"JAMES P. CUMMISKEY
Penobscot Bldg.
Detroit

December 13, 1920.

"Mr. E. C. CROWLEY,

"Ohio & Michigan Coal Co.,

"917 Dime Bank Bldg.,

"Detroit, Michigan.

"*Dear Sir:* In accordance with my letter to you of

this date the terms of which you have agreed upon it is my desire with your assistance to convert the active assets over and above $85,000 of Ohio & Michigan Coal Company into Liberty Bonds, or other securities as I may direct.

"The $85,000 that will remain under this plan as cash in the company plus the $15,000 which you in accordance with my letter above mentioned will leave in the treasury will give said Ohio & Michigan Coal Company an actual working fund of $100,000.

"The net profits of said Ohio & Michigan Coal Company for the year 1921, if any, will be divided and paid at the end of the year on a basis of 30% to you and 70% to me; you to permit, however, the deduction of interest at the rate of 6% per annum on an amount of $15,000 from your portion of the net profits since you on the theory of a $100,000 working fund will be drawing under this agreement profits on an investment the equivalent of $30,000, whereas the actual amount you are leaving in the treasury is but $15,000.

"My letter to you already referred to herein of this date is a part of this understanding.

"Yours truly,
(Sgd.)   "J. P. CUMMISKEY,
"Accepted and Satisfactory
(Sgd.)   "E. C. CROWLEY.
"Witness:
"R. C. BEASLEY."

Plaintiff continued with the company under the contract during 1921 and 1922. The sales of coal during this period exceeded 1,000,000 tons a year. Defendant Cummiskey, the principal owner of the coal company, employed P. R. Beasley & Company, expert accountants, to examine the books and furnish accounts. They had been employed by defendant Cummiskey in previous years. The general ledger of the defendant company showed profits for the calendar year of 1921 of $33,602.54, and this amount was transferred from the profit and loss account of the defendant company to its surplus account.

April 23, 1923, defendant coal company, by de-

fendant Cummiskey as president and Mr. Baird as secretary, applied in writing to the Standard Accident Insurance Company of Detroit for a bond in the sum of $15,000 to be filed in a suit commenced by plaintiff against defendants, to which application was attached a copy of the tentative balance sheet of the defendant coal company prepared by its secretary, Mr. Baird, as of December 31, 1922, and of its balance sheet as of December 31, 1921, showing an increase in assets during the period between the two statements of $27,428.12. Mr. Wyman, a public accountant with P. R. Beasley & Company, made an audit of the books of the coal company and prepared the balance sheet from the books and a statement of income and profit and loss for the calendar year 1922. It showed sales for the calendar year of 1922 of $1,141,628.40, and profits before accounting adjustments of $20,746.68, and profits after the accounting adjustments of $13,871.11. Plaintiff on the witness stand made a computation showing the profits of the defendant company during the calendar years of 1921 and 1922, $15,043.87. Mr. Fletcher, a certified public accountant, was employed by defendant Cummiskey's secretary and instructed by him and by Mr. Cummiskey to make an examination of the Beasley reports for the purpose of the present lawsuit. The accountant testifies that he knew the lawsuit was coming on, what the issues were in the case, and that he prepared the audit himself to be used in this suit. Although Mr. Fletcher admits that the reports prepared by Beasley & Company were prepared in an efficient manner, he criticizes them in some particulars. His handling of the accounts of defendant company resulted in showing a balance due the corporation for 1921 and 1922 of $41, subject to the net final figure on which the government income tax of the corporation should be computed, which might still further increase the company's losses.

The defendant company's business was a continuing one.   Each year, as a general rule, was credited with the profits realized and charged with the losses paid during that year.   The income tax reports were made on the same basis.   Losses suffered were charged off when they accrued.   If the company subsequently collected the money it was credited as income for the year in which it was collected.   Defendants raised two questions:

(1) That the court should have directed a verdict for the defendants, and
(2) That the verdict was against the weight of evidence.

There is ample evidence in the record to support the verdict.   The weight of the evidence was for the jury.

The disputed questions of fact were fairly submitted to the jury after a trial in which the defendants' rights were fully protected; and the verdict and judgment, much smaller than plaintiff claimed, is affirmed, with costs.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.